# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF TEXAS
### MARSHALL DIVISION

| | | |
|---|---|---|
| **JEFFREY GLOVER AND TRESA GLOVER,** *Plaintiffs,*<br><br>**v.**<br><br>**GRAPHIC PACKAGING INTERNATIONAL, LLC,** *Defendant.* | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | **CIVIL NO. 2:22-cv-00191-JRG-RSP** |

---

### DEFENDANT GRAPHIC PACKAGING INTERNATIONAL, LLC'S DESIGNATION OF EXPERT WITNESSES

---

TO:  Plaintiffs Jeffrey and Tresa Glover by and through their counsel of record, Jimmy Negem, Sr. and Joe Worthington, NEGEM & WORTHINGTON, PC, 1828 ESE Loop 323, Suite R-1A, Tyler, Texas 75701.

Defendant Graphic Packaging International, LLC (herein, "Defendant" or "GPI") serves the following Designation of Expert Witnesses and Disclosure of Expert Testimony in accordance with Federal Rule of Civil Procedure 26(a)(2)(A).

Respectfully submitted,

**MAYER LLP**
750 N. St. Paul Street, Ste. 700
Dallas, Texas 75201
T: 214.379.6900 | F: 214.379.6939

By: */s/ Aaron M. Speer*
    Aaron M. Speer
    State Bar No. 24051365
    aspeer@mayerllp.com
    Matthew L. Morris
    State Bar No. 24101264
    mmorris@mayerllp.com

**ATTORNEYS FOR DEFENDANT
GRAPHIC PACKAGING
INTERNATIONAL, LLC**

<u>**CERTIFICATE OF SERVICE**</u>

    I certify that on August 7, 2023, a true and correct copy of the foregoing has been forwarded to all counsel of record via the Court's CM/ECF system pursuant the Federal Rules of Civil Procedure.

<u>**Via ECF**</u>
Jimmy M. Negem
Joe M. Worthington
Jimmy M. Negem, Jr.
NEGEM & WORTHINGTON
1828 E SE Loop 323, Suite R-1A
Tyler, Texas 75701

        */s/ Aaron M. Speer*
        Aaron M. Speer

## DESIGNATION OF EXPERT WITNESSES AND DISCLOSURE OF EXPERT TESTIMONY

### A.    WITNESSES WHO MUST PROVIDE A WRITTEN REPORT

The following persons have been retained or specially employed by Defendant GPI to provide expert testimony pursuant to Federal Rule of Civil Procedure 26(a)(2)(B):

**<u>Retained Expert Witness 1</u>**
Shanon R. Burgess
Aperture LLC
549 Silicon Driver, Suite 100
Southlake, TX  76092
817-251-9910
Shanon.burgess@aperturellc.com

Mr. Burgess is a motor vehicle accident reconstructionist with a background in accident investigation, reconstruction, and analysis of commercial vehicles through the employment of various engineering and scientific disciplines. Mr. Burgess is Defendant GPI's retained expert in the field of accident reconstruction and is expected to testify as to his opinions on how the underlying accident occurred and the factors contributing to cause the accident. Mr. Burgess's opinions will likely include, but are not limited to, his investigation and reconstruction of the accident, the driving conditions on the day in question, including the speed of the subject tractor-trailer during various phases of the accident, the center of gravity of the subject load, the geometry of the accident scene, the driver's actions, and contributing factors to the accident. Mr. Burgess' conclusions are stated with a reasonable degree of scientific certainty and are as follows:

1) The accident occurred at approximately 10:45am CST on January 11, 2022;

2) The physical evidence indicated the left rear corner of the trailer came into contact with the roadway and proceeded to slide 17.3 to 23.9 feet to final rest;

3) The Freightliner was travelling approximately 22 mph prior to the rollover event;

4) The Freightliner was travelling approximately 16 to 21 mph at the time the trailer contacted the roadway surface;

5) The witness statements are inconsistent with the physical evidence;

6) The testimonial evidence of Mr. Glover is inconsistent with the physical evidence;

7) Mr. Glover's speed was unsafe given the physical evidence and conditions;

8) Mr. Glover failed to control the speed of his vehicle;

9) The primary cause of the rollover event was the Freightliners' speed during the turn.

The general substance of Mr. Burgess' mental impressions and a brief summary of the basis for them are contained within his report, dated August 7, 2023, which is attached hereto as **Exhibit "A"** and is incorporated by reference herein.

Mr. Burgess has background and experience in the investigation of motor vehicle accidents involving commercial motor vehicles and the evaluation of the speed of a vehicle and the effect of speed on a tractor-trailer when it is negotiating a turn or curve in a roadway. For additional information regarding his qualifications, experience, and expertise, Plaintiffs are respectfully referred to Mr. Burgess' report, attached hereto as **Exhibit "A"**, and to his Curriculum Vita, attached hereto as **Exhibit "B"**. Mr. Burgess will express opinions with regard to the subject matter referenced above and as set out more specifically in his expert report as well as any

opinions expressed at his oral deposition, if and when such deposition is taken.

Plaintiffs are respectfully referred to Mr. Burgess' written report and enclosures, attached hereto as **Exhibit "A"** for s regarding his factual observations, mental impressions and opinions incorporated herein by reference.

For additional details regarding Mr. Burgess' qualifications, experience, training, and education, please see his CV attached hereto as **Exhibit "B".** Defendant further incorporates by reference herein and refers Plaintiffs to any supplemental reports (if any) of this expert and to the deposition testimony of and exhibits introduced through the deposition of this expert, if and when said deposition is taken. Mr. Burgess may additionally review expert reports of any experts designated by the parties in this matter as well as additional depositions taken in the future.

Any and all documents that have been provided to date to Mr. Burgess through the date of this Designation/Disclosure are itemized below:

1) Texas Peace Officer's Crash Report, TxDOT Crash ID: 18690840.1/2022009014;

2) Provided photographs of plaintiffs' load;

3) Provided videos of plaintiffs' vehicle at scene;

4) AT&T Fleet Complete GPS positional and speed data;

5) Provided ECM data from 2013 Freightliner;

6) Transcript of Jeffrey Glover's May 12, 2023, deposition;

7) Transcript of Jerry Hilton's June 15, 2023, deposition;

8) Transcript of Tonza Lyle's June 15, 2023, deposition;

9)  Transcript of Alan Fonteneaux's May 15, 2023, deposition;

10) Provided discovery documents;

11) Statement of Ashly Myers taken on April 28, 2023;

12) Statement of Cory McMurry taken on April 28, 2023;

13) Statement of Thomas McQueen taken on June 7, 2023;

14) Statement of Lorrie Richardson taken on June 10, 2023;

15) Statement of Curtis McChester taken on May 15, 2023;

16) Plaintiff's July 19, 2023, First Amended Original Complaint;

17) Expert Report of Danny Phillips.


For any compensation to be paid to the expert witness for the testimony and preparation of the testimony, please see **Exhibit "C"** attached.

For a listing of any other cases in which Mr. Burgess has testified as an expert at trial or Deposition, please see **Exhibit "D"** attached.


**Retained Expert Witness 2**
Clayton Merches
LEC, LLC (Leading Edge Consulting, LLC)
707 N. Franklin Street
New Ulm, MN  56073
507-438-7386

Mr. Merches is an expert in the areas of the Federal Motor Carrier Safety Regulations and their application to loading and transporting loads similar to the load in this case, including but not limited to, driver training, load placement, load securement, and standards for inspection of loads by a driver like Mr. Glover.  He is also an expert on Transportation Industry Safety Standards.  The general substance

of Mr. Merches' mental impressions and a brief summary of the basis for them are contained within his report dated August 3, 2023, incorporated herein by reference and attached hereto as **Exhibit "E"**. He has background and experience in the training of persons like Mr. Glover in regard to their responsibilities to inspect a load prior to transporting the load. He further has experience in loading practices, including placement and securement. For additional information regarding his qualifications, experience, and expertise, please see his report and his Curriculum Vita attached hereto. He will express opinions with regard to the subject matter referenced above and as set out more specifically in his expert report as well as any opinions expressed at his oral deposition if and when taken. Mr. Merches' opinions, based on a reasonable degree of certainty, include, but are not limited to, the following:

1) Mr. Glover violated Texas Transportation Code §545.351(a) – An operator may not drive at a speed greater than is reasonable and prudent under the circumstances then existing.

2) Mr. Glover violated Texas Transportation Code §545.351(b)(1) – An operator may not drive a vehicle at a speed greater than is reasonable and prudent under the conditions and having regard for actual and potential hazards then existing.

3) Mr. Glover violated Texas Transportation Code §545.351(c)(2) – An operator shall, consistent with subsections (a) and (b), drive at an appropriate reduced speed if: the operator is approaching and going around a curve.

4) Mr. Glover was subject to the Federal Motor Carrier Safety Regulations.

5) Abernathy Company was subject to the Federal Motor Carrier Safety Regulations.

6) Graphic Packing International shipping department was not subject to the Federal Motor Carrier Safety Regulations.

7) Graphic Packing International likely configured and distributed the weight appropriately across the axles of the trailer.

8) Mr. Glover failed to open the trailer doors and inspect the cargo configuration and distribution.

9) Mr. Glover failed to confirm the rear paper roll was firmly immobilized or secured within the vehicle structure and violated 49 CFR §393.106.

10) Abernathy Company failed to ensure Mr. Glover complied with the Federal Motor Carrier Safety Regulations.

11) Mr. Glover likely operated a vehicle that had multiple tires with less than 2/32nds of an inch tread depth and violated 49 CFR §393.75(c).

12) Abernathy Company likely violated 49 CFR §396.11(a)(3) – Prior to requiring or permitting a driver to operate a vehicle, every motor carrier or its agent shall repair any defect or deficiency or deficiency listed on the driver vehicle inspection report which would likely to affect the safety of operation of the vehicle.

Please refer to evidence reviewed in his report attached hereto to his expert report which is marked as **Exhibit "E"** and is incorporated herein by reference.

Please see his written report and enclosures, attached as **Exhibit "E"** for specifics regarding his factual observations, mental impressions and opinions incorporated herein by reference. Please see **Exhibit "E"** for all purposes for the information required by the Texas and Federal Rules of Civil Procedure, including the subject matter, the general substance of the expert's mental impressions and opinions and a summary of the bases for them. For information describing the documents and items reviewed by this expert, please see all documents and matters

identified in his expert report, which you are already in possession of and all documents and items provided with this designation.

For additional details regarding Mr. Merches' qualifications, experience, training, and education, please see his CV attached hereto as **Exhibit "F"**. Defendant further incorporates by reference herein and refers Plaintiffs to any supplemental reports (if any) of this expert and to the deposition testimony of and exhibits introduced through the deposition of this expert, if and when taken. Mr. Merches may additionally review expert reports of any experts designated by the parties in this matter as well as additional depositions taken in the future.

Any and all documents that have been provided to date to Mr. Merches through the date of this Designation/Disclosure are itemized below, as well as additional resources reviewed and relied upon:

Production

1) 2 9-1-1 CALLS ALONG WITH CALL SHEET (Folder)

2) 6 SCENE DIAGRAMS (Folder)

3) 7 VARIOUS EMAILS (Folder)

4) 12 PHOTOS (Folder)

5) 14 PHOTOS OF THE LOAD OF THE TRAILER IN QUESTION (Folder)

6) 253 PHOTOS (Folder)

7) 360 PHOTOS (Folder)

8) 476 PHOTS (Folder)

9) EDR DATA (Folder)

10) EMAILS FROM ABERNATHY (Folder)

11) GLOVER –Plaintiff_s production – Statement of Lorrie Richardson (6-15- 23)

12) GLOVER –Plaintiff_s production – Statement of Thomas McQueen (6-7-23)

13) 9617543 Glover.Jeffrey 051223.miniprint

14) 9617543 Glover.Tresa B. 051223.miniprint

15) Fonteneaux, Alan – 894817 Final_cond_N

16) Lyons, Cedric – 894814 Final_cond_N

17) 02660-02836

18) 002837-002841

19) A – Daniel R. Phillips Report

20) Ashly Myers Affidavit

21) B – Danile R. Phillips CV

22) C – Daniel R. Phillips Fee Schedule

23) C McChester

24) Cory McMurry Affidavit

25) CTR1005548 ABERNATHY

26) D – Daniel R. Phillips Testimony

27) E – Roger C. Allen Report

28) F – Roger C. Allen CV

29) G – Roger C. Allen Fee Schedule

30) GLOVER – Defendant_s production 00001 – 00029 (S 8-22-22)

31) GLOVER – Defendant_s production 00030 – 00081 (S 9 20 2022)

32) GLOVER - Defendant_s production 00082 – 00084 (S 9 26 2022)

33) GLOVER – Texarkana Police Department

34) GLOVER (41) – Plaintiffs_Expert Designations (7-17-23)

35) GPI 01121 – 01125

36) GPI 02660 – Video-Truck Loading and Unloading Safety

37) GPI 004351 – GPI 004562

38) GPI Production docs 5.3.23.(GPI 02534 – GPI 02659)

39) H – Roger C. Allen Testimony

40) Hilton, Jerry – 900556 Final_cond_N

41) Lazer Spot Multi-Facility Shuttle Agreement

42) N – Statement of Cory McMurry

43) O – Statement of Ashly Myers

44) IMG_5709

45) IMG_5727

46) VIDEO (1)

47) VIDEO (2)

48) VIDEO (3)

49) FRONT CORNER

50) FULL LOAD

51) Glover – Crash Report

52) GLOVER SUIT, TRAILER LOAD PHOTO

53) LOAD ORDER

54) PO S024130825 RES 01112022

55) Abernathy 000001-000024

56) Abernathy 000025-000054

57) Abernathy 000055-000101

58) Abernathy 000102-000118

59) Abernathy 000119-000120

60) Abernathy 000121-000130

61) Abernathy 000131-000312

62) Abernathy 000313-000360

Additional Materials 2.1 Federal Motor Carrier Safety Regulations, (FMCSRs)

63) Texas Transportation Code

64) Texas Administrative Code

65) Texas CDL Handbook

66) Commercial Vehicle Safety Alliance Criteria (CVSA)

Mr. Merches may also at the time of his deposition comment upon the information provided and/or opinions rendered by one or more other experts designated by Plaintiffs or any other party, as necessary for a complete discussion of his opinions. His expert file will be produced at his deposition since all documents provided to the witness may be too voluminous for production here and most of them should already be in the possession of the other parties to this litigation. He reserves the right to consider additional discovery or facts that may become available after

this designation and prior to their testimony at trial and to refine their opinions and respond to opinions advanced by Defendant's experts.

For any compensation to be paid to the expert witness for the testimony and preparation of the testimony, please see **Exhibit G** attached.

For a listing of any other cases in which Mr. Merches has testified as an expert at trial or deposition, please see **Exhibit H** attached.

**Retained Expert Witness 3**
Shahin Shirzadi, M.D.
Houston Neurology Associates
1415 Highway 6 South, A200
Sugar Land, Texas  77478
713-777-4122

Dr. Shirzadi is a neurology specialist. He is an expert in the diagnosis and classification of brain injuries, including Traumatic and its classification.  He has expertise in the neurological findings, testing, and objective symptoms and finding which will support a diagnosis of Traumatic Brain Injury.  He has experience in evaluating patients with alleged Traumatic Brain Injury and will opine on testing and findings which may not be diagnostic of a Traumatic Brain Injury.  His opinions, based a reasonable medical probability, include, but are not limited to, the following:

1) Mr. Jeffrey Glover sustained a complicated mild traumatic brain injury.  Mr. Glover did experience some confusion at the time of the accident, which quickly resolved without any residual deficit.

2) If Mr. Glover is experiencing any memory disturbance, it is not related to the motor vehicle accident of January 11, 2022.

3) If Mr. Glover is experiencing headaches, it is not related to the motor vehicle accident of January 11, 2022, as the symptoms presented months after the injury.

4) If Mr. Glover is experiencing dizziness, it is unrelated to the motor vehicle accident as the symptoms presented months after the injury.

5) If Mr. Glover is experiencing blurry vision, it is unrelated to his motor vehicle accident as the symptoms presented months after the injury.

6) If Mr. Glover is experiencing neck pain, it is unrelated to the motor vehicle accident as the symptoms presented months after the injury. If the neck pain was related to the motor vehicle accident, the symptoms should have presented within the first week or two. Any workup regarding the neck pain is considered unnecessary and not related to the motor vehicle accident.

7) At this time, quantitative EEG is predominantly used for research purposes and is not considered the standard of care.

8) Quantitative EEG techniques are very predisposed to false-positive errors— it cannot differentiate mild traumatic brain injury from other neurological/psychiatric disorders and it is affect by many factors.

The general substance of Dr. Shirzadi's mental impressions and a brief summary of the basis for them are contained within his report dated August 2, 2023 incorporated herein by reference. For additional information regarding his qualifications, experience, and expertise, please see his report and his Curriculum Vita attached hereto. He will express opinions with regard to the subject matter referenced above and as set out more specifically in his expert report as well as any opinions expressed at his oral deposition if and when taken.

Please see his written report and enclosures, attached as **Exhibit "I"** for specifics regarding his factual observations, mental impressions and opinions incorporated herein by reference.

Please see **Exhibit "I"** for all purposes for the information required by the Texas and Federal Rules of Civil Procedure, including the subject matter, the general

substance of the expert's mental impressions and opinions and   summary   of   the bases for them. For information describing the documents and items reviewed by this expert, please see all documents and matters identified in his expert report, which you are already in possession of and all documents and items provided with this designation.

For additional details regarding Dr. Shirzadi's qualifications, experience, training, and education, please see his CV attached hereto as **Exhibit "J".** Defendant further incorporates by reference herein and refers Plaintiffs to any supplemental reports (if any) of this expert and to the deposition testimony of and exhibits introduced through the deposition of this expert, if and when taken. Dr. Shirzadi may additionally review expert reports of any experts designated by the parties in this matter as well as additional depositions taken in the future.

Any and all documents that have been provided to date to Dr. Shirzadi through the date of this Designation/Disclosure are itemized below:

1) EMS report

2) The records from Wadley Regional Medical Center Emergency Room as well as the records from his hospitalization

3) The initial evaluation of 02/02/2022 at Collom and Carney Clinic by Darius F. Mitchell, M.D. as well as follow up visits of 03/02/2022 and 04/04/2022.

4) The evaluations of 05/16/2016 by Charles D. McCorkle, M.D. at Collom and Carney Clinic

5) The evaluations of 08/09/2016 by Blane Graves, M.D. at Collom and Carney Clinic as well as the follow up visits of 09/30/2016 and 10/18/2017

6) The evaluation of 03/07/2022 by Barry D. Baskin, M.D. as well as follow-up visits of 04/20/2022, 06/06/2022, 07/13/2022, 08/15/2022 and 02/06/2023.

7) The evaluation of 05/31/2022 by Wendy Gammon, FNP–C as well as follow-up appointment of 12/01/22 as well as 11/19/2021

8) MRI of the brain without contrast performed on 03/07/2022 at Arkansas Surgical Hospital as well as chest x-ray and MRI of the left shoulder without contrast

9) Left shoulder manipulation under anesthesia by Darius F. Mitchell, M.D.

10) The initial evaluation of 05/02/2022 by Lawrence O'Malley, M.D. as well as the follow-up evaluation of 06/06/2022, 07/07/2022, 07/28/2022 and 09/01/2022

11) The evaluation of 06/14/2022 by Simon Tan, M.D.

12) The evaluation of 06/15/22 by Marce' Hufnagel, M. Ed, LPC

13) The evaluation of 06/15/2022 by Daniela Madrinan MS, CF-SLP

14) The evaluation of 06/15/2022 for Neuro Functional Response Test, EEG frequency analysis, evoked potentials and behavioral motor test

15) The evaluation of 07/11/2022 by Brad Williams, PhD

16) MRI of the brain without contrast on 07/13/2022 at Arkansas Surgical Hospital

17) Left shoulder arthrogram at Wadley Regional Medical Center on 07/18/22

18) Neuropsychological evaluation of 08/18/2022 as well as 08/19/2022 by Gabrielle Jasso, PsyD, ABBHP, ABDA, ABMPP

19) CT of the head without contrast on July 24, 2022 at MRI Centers of Texas

20) Driving evaluation by Ryan Johnston, OTR/L, DRS on 09/07/22

21) The evaluation of 10/12/22 by Jennifer Doyle, M.D.
22) Physical therapy/occupational therapy/speech therapy evaluations at Neuro Restorative from 09/13/2022 through 12/21/2022.

23) The evaluation of 12/13/2022 by William Dreiss, M.D. as well as 05/09/2023

24) MRI of the cervical spine performed on 12/30/2022 at TRMH MRI Imaging Center

25) The neuropsychological evaluation at Neuro Restorative by Ken Webb, MS, LPEI on 01/12/2023 as well as 01/13/2023

26) Independent medical examination of 03/27/2023 by Wayne Bruffett, M.D.

27) Emails from Heather Montgomery, RN, CCM to Wendie McKenzie and Donna Lankford, RN dated 02/02/2022, 03/07/22, 04/20/2022, 06/06/22, and 08/15/2022

Dr. Shirzadi may also at the time of his deposition comment upon the information provided and/or opinions rendered by one or more other experts designated by Plaintiffs or any other party, as necessary for a complete discussion of his opinions. His expert file will be produced at his deposition since all documents provided to the witness may be too voluminous for production here and most of them should already be in the possession of the other parties to this litigation. He reserves the right to consider additional discovery or facts that may become available after this designation and prior to their testimony at trial and to refine their opinions and respond to opinions advanced by Plaintiffs' experts.

For any compensation to be paid to Dr. Shirzadi for the testimony and preparation of the testimony, please see **Exhibit "K"** attached.

For a listing of any other cases in which Dr. Shirzadi has testified as an expert at trial or Deposition, please see **Exhibit "L"** attached.

**Retained Expert Witness 4**
William Charles Watters III, M.D.
3748 Olympia Drive
Houston, Texas  77019
713-302-6546
spinedoc@pdq.net

William C. Watters, M.D. is a Board Certified orthopedic surgeon licensed to practice in the State of Texas. He has been in clinical practice for more than 35 years specializing in the treatment of adult spinal conditions. Defendant expects Dr. Watters to present expert testimony concerning the past and current medical conditions of Plaintiff in relation to the incident that forms the basis of this lawsuit ("the Incident"). After reviewing a variety of documents, medical records and imaging studies regarding Plaintiff, Dr. Watters is expected to testify, based upon his knowledge, skills, training and experience in the medical field, about Plaintiff's musculoskeletal conditions both before and after the motor vehicular collision that occurred on, or around, January 11, 2022. In formulating his opinions, Dr. Watters has relied upon the Plaintiff's medical records and imaging studies obtained after the incident that is the focus of this litigation, in rendering his opinion in this matter. Dr. Watters may also testify regarding the scope and extent of the Plaintiff's alleged injuries resulting from the collision and the cause thereof, the medical care received by the Plaintiff and the reasonableness and necessity of the interventions and associated billing charges related to care rendered to Plaintiff after the collision that is the focus of this litigation. It is expected he will testify that a cervical spine injury was not sustained in the accident on January 11, 2022, and that the treatment done and proposed for the cervical spine by Dr. Calodney is not necessary as a result of this accident. Dr. Watter's opinions, based upon a reasonable degree of medical certainty/probability, include, but are not limited to, the following:

1) A review of the records reveals this 52-year-old claimant was the restrained driver of an 18-wheeler tractor-trailer truck that turned over on its side while he was executing a right turn on 1/11/2022.

2) When initially seen the same day in a local ED, he had no spinal complaints, a normal neurological examination, and mild degenerative findings at C4-5 and C5-6 on an axial spinal CT scan.

3) Subsequent care focused on his clavicle and rib fractures, a shoulder injury, and a closed head injury with several areas of hemorrhage.

4) The first indication of an intent to treat any spinal complaints in the records is when Dr. Arron Calodney saw the claimant on 12/13/2022, eleven months after his injury date of 1/11/2022. He complained of right-sided neck pain radiating to his right trapezius and scapula. Dr. Calodney's examination on that occasion failed to specify physical findings that would lead to either facet injections or MBBs of specific facets as proposed in his records.

5) Concerning the use of steroid injections to treat the pain of a spinal origin: *facet injections (i.e.,* injections into the facet joint or medial branch facet blocks) are used to treat (or diagnose) axial spinal pain only without evidence of any nerve root impingement (*i.e.,* back or neck pain only – no radiculopathy). Physical findings that would lead to a facet block include documented pain over a specific facet joint(s) on deep palpation, often with a palpable hard nodule, and pain over the involved specific facet joint(s) on extension or extension and rotation of the back.

6) With no recorded physical findings that could localize specific facets that might be candidates for injection and with inconsistent evidence of some facet pathology on MRI (right-side C5-6 and left-side C6-7), his proposed injections of the right occipital nerve, and right C5, C6, and C7 facets recommended on 12/13/2022 were not medically reasonable.

7) For the same reason, Dr. Caldoney's proposed MBB injections of the bilateral C4, C5, and C6 facets noted during the video visit with the claimant on 7/10/2023 is not medically reasonable. His reason for planning MBBs on these facets rather than those he proposed on 12/13/2022 is not explained in the records and is no justified by appropriate physical findings.

8) In conclusion, the records reviewed do not support the occurrence of significant axial spinal injuries beyond the possibility of simple sprains and strains to the axial spine resulting from the events of 1/11/2022. The claimant was not and is not a candidate for interventional pain management or surgical treatment of the cervical, thoracic, or lumbar spines.

The general substance of Dr. Watters' mental impressions and a brief summary of the basis for them are contained within his first amended report dated August 6, 2023 incorporated herein by reference and attached hereto as **Exhibit "M"**. He has background and experience in the evaluation of cervical spine complaints and the appropriateness of treatment for such complaints. For additional information regarding his qualifications, experience, and expertise, please see his report and his Curriculum Vita attached hereto. He will express opinions with regard to the subject matter referenced above and as set out more specifically in his expert report as well as any opinions expressed at his oral deposition if and when taken. Please refer to evidence reviewed in his report attached hereto to his expert report which is marked as **Exhibit "M"** and is incorporated herein by reference.

Please see his written report and enclosures, attached as **Exhibit "M"** for specifics regarding his factual observations, mental impressions and opinions incorporated herein by reference.

Please see **Exhibit "M"** for all purposes for the information required by the Texas and Federal Rules of Civil Procedure, including the subject matter, the general substance of the expert's mental impressions and opinions and a summary of the bases for them. For information describing the documents and items reviewed by this expert, please see all documents and matters identified in his expert report, which you are already in possession of and all documents and items provided with this designation.

For additional details regarding Dr. Watters' qualifications, experience, training, and education, please see his CV attached hereto as **Exhibit "N".** Defendant further incorporates by reference herein and refers Plaintiffs to any supplemental reports (if any) of this expert and to the deposition testimony of and exhibits introduced through the deposition of this expert, if and when taken. Dr. Watters may additionally review expert reports of any experts designated by the parties in this matter as well as additional depositions taken in the future.

Any and all documents that have been provided to date to Dr. Watters through the date of this Designation/Disclosure are itemized below:

1) POP

2) Texas Peace Officer's Crash Report dated 1/11/2022

3) Plaintiff's Initial Disclosures

    a. Titis Regional Medical Center – MRI Report

    b. Precision Spine Care

    c. Brain View

    d. Specialty Imaging Consultants

    e. MRI Centers of Texas

4) Shipp Needham – Economic Analysis

5) Medical Records from Titis Regional Medical Center

6) Medical Records from Psychological Services (Brad Williams, MD)

7) Medical Records from A-Medical Advantage Healthcare Systems

8) Medical Records from Arkansas Surgical Hospital

9)  Medical Records from Barry Baskin, MD

10) Medical Records from Collom & Carney Clinic

11) Medical Records from Life Net Emergency Services

12) Medical Records from Neurorestorative Timber Ridge

13) Medical Records from OrthoArkansas

14) Medical Records from Smith County Healthcare Systems

15) Medical Records from Texarkana Family Healthcare

16) Medical Records from Imaging Wadley Regional Medical Center (Cannot open)

17) Medical Records from University of Arkansas – no spinal imaging – just routine X-rays

18) Deposition of Jeffery Glover

19) Deposition of Treas Glover

20) Deposition of Alan Fontenauex

21) Deposition of Cedric Lyons

22) Deposition of Alan Fontenauex

23) Deposition of Cedric Lyons

Dr. Watters may also at the time of his deposition comment upon the information provided and/or opinions rendered by one or more other experts designated by Plaintiffs or any other party, as necessary for a complete discussion of his opinions. His expert file will be produced at his deposition since all documents provided to the witness may be too voluminous for production here and most of them should already be in the possession of the other parties to this litigation. He reserves

the right to consider additional discovery or facts that may become available after this designation and prior to their testimony at trial and to refine their opinions and respond to opinions advanced by Plaintiff's experts.

For any compensation to be paid to the expert witness for the testimony and preparation of the testimony, please see **Exhibit "O"** attached.

For a listing of any other cases in which Dr. Watters has testified as an expert at trial or Deposition, please see **Exhibit "P"** attached.

**Retained Expert Witness 5**
Laura LaCritz, M.D.
University of Texas Southwestern Medical Center
Neuropsychology
Department of Psychiatry
5323 Harry Hines Blvd.
Dallas, Texas  75390-8846
214-648-4650
Laura.lacritz@utsouthwestern.edu

Laura LaCritz M.D. is a Board Certified Clinical Neuropsychologist licensed to practice in the State of Texas. She has specialized training in brain-behavior relationships.  Defendant expects Dr. LaCritz to present expert testimony concerning the alleged cognitive difficulties of Plaintiff in relation to the incident that forms the basis of this lawsuit ("the Incident").  After reviewing a variety of documents, medical records, imaging studies, neuropsychological testing and other documents regarding Plaintiff, Dr. LaCritz is expected to testify, based upon her knowledge, skills, training and experience in the medical field, about Plaintiff's alleged difficulties cognitively after the motor vehicular collision that occurred on, or  around, January 11, 2022.  In formulating his opinions, Dr. LaCritz relied upon the Plaintiff's medical records and

imaging studies and testing obtained  after the incident that is the focus of this litigation, in rendering her opinion in this matter.  Dr. LaCritz may also testify regarding the scope and extent of the Plaintiff's alleged injuries and cognitive difficulties resulting from the collision and the cause thereof, the medical care received by the Plaintiff and the reasonableness and necessity of the interventions and associated billing charges related to care rendered to Plaintiff after the collision that is the focus of this litigation. It is expected she will testify that any head injury the plaintiff may have suffered in this accident are resolved and the neurological testing performed does not document cognitive impairment which should prevent Plaintiff from being able to continue to work as he did before the accident and there is no indication of functional difficulties with activities of daily living due to cognitive impairment.  Dr. LaCritz' opinions, expressed to a reasonable degree of neuropsychological probability, include but are not limited to, the following:

1. Overall, Mr. Glover appears to have suffered a mild complicated traumatic brain injury with from which he has made a good recovery based on results from his 1/2023 neuropsychological evaluation and discharge summaries from his rehabilitation program.

2. His functional recovery was likely impacted by pain and mood symptoms, both of which can mimic and/or prolong symptoms associated with a brain injury.

3. From a cognitive perspective, Mr. Glover possesses the requisite cognitive abilities to return to work. Mood symptoms are likely to improve as he resumes more of his normal activities, though continued treatment is recommended to promote optimal recovery and functioning.

The general substance of Dr. LaCritz' mental impressions and a brief summary of the basis for them are contained within her report dated August 7, 2023

incorporated herein by reference.  She has background and experience in the evaluation of cognitive impairment and the appropriateness of treatment for such complaints.  For additional information regarding her qualifications, experience, and expertise, please see her report and her Curriculum Vita attached hereto.  She will express opinions with regard to the subject matter referenced above and as set out more specifically in her expert report as well as any opinions expressed at her oral deposition if and when taken.  Please refer to evidence reviewed in her report attached hereto to her expert report which his marked as **Exhibit "Q"** and is incorporated herein by reference.

Please see her written report and enclosures, attached as **Exhibit "Q"** for specifics regarding her factual observations, mental impressions and opinions incorporated herein by reference.

Please see **Exhibit "Q"** for all purposes for the information required by the Texas and Federal Rules of Civil Procedure, including the subject matter, the general substance of the expert's mental impressions and opinions and a summary of the bases for them. For information describing the documents and items reviewed by this expert, please see all documents and matters identified in his expert report, which you are already in possession of and all documents and items provided with this designation.

For additional details regarding Dr. LaCritz' qualifications, experience, training, and education, please see her CV attached hereto as **Exhibit "R"**. Defendant further incorporates by reference herein and refers Plaintiffs to any

supplemental reports (if any) of this expert and to the deposition testimony of and exhibits introduced through the deposition of this expert, if and when taken. Dr. LaCritz may additionally review expert reports of any experts designated by the parties in this matter as well as additional depositions taken in the future.

Any and all documents that have been provided to date to Dr. LaCrtiz through the date of this Designation/Disclosure are itemized below:

Medical Records Reviewed:

1) Barry Baskin, MD

2) Smith County Healthcare Systems

3) Gabriel Jasso, PsyD

4) NeuroRestorative Timber Ridge

5) Haley Layton, PhD.

6) Brad Williams, PhD (report and email communication)

7) Jeffrey Glover deposition

8) Alan Fontenot deposition

9) Cedric Lyons deposition

10) Tresa Glover deposition

11) Titus Regional Medical Center

12) Precision Spine Care

13) Brain View

14) MRI Centers of Texas

15) Wadley Regional Medical Center

16) A Medical Advantage Healthcare System

17) Arkansas Surgical Hospital

18) Collom and Carney Clinic

19) LifeNet Emergency Medical Services

20) MRI centers of Texas

21) OrthoArkansas

22) Specialty Imaging Consultants

23) Texarkana Family Healthcare

24) University of Arkansas Medical Center

Additional Records Reviewed:

25) Plaintiffs original complaint

26) Texas Department of Transportation Crash Report

27) Plaintiffs initial disclosures first supplement

28) Allyn Needham, PhD

Dr. LaCritz may also at the time of her deposition comment upon the information provided and/or opinions rendered by one or more other experts designated by Plaintiffs or any other party, as necessary for a complete discussion of his opinions. Her expert file will be produced at her deposition since all documents provided to the witness may be too voluminous for production here and most of them should already be in the possession of the other parties to this litigation. She reserves the right to consider additional discovery or facts that may become available after this designation and prior to their testimony at trial and to refine their opinions and respond to opinions advanced by Plaintiff's experts.

For any compensation to be paid to the expert witness for the testimony and preparation of the testimony, please see **Exhibit "S"** attached.

For a listing of any other cases in which Dr. LaCritz has testified as an expert at trial or Deposition, please see **Exhibit "T"** attached.

### Retained Expert Witness 6
Michelle M. Aliff, Ph.D., CRC, CVE
Aliff Vocational Consultants LLC
606 Edgebrook Ave
Keller, Texas 76248
503-516-9863
Michelle.aliff@gmail.com

Dr. Aliff is an expert in the field of vocational rehabilitation. She is a Certified Rehabilitation Counselor and Certified Vocational Evaluator. She received her Bachelor's of Science Degree from the University of Arizona and her Masters of Rehabilitation Counseling from Texas Tech University Health Sciences Center. She also earned her Ph.D. in Special Education from Texas Tech University. Dr. Aliff is expected to testify as to any subjects within her field of expertise which are raised by the Plaintiffs' expert(s). Dr. Aliff is also expected to offer expert opinions and analysis in the areas of vocational assessment, job placement, job analysis, job aptitude, and labor market analysis as it is related to Plaintiff and other persons similarly situated. Dr. Aliff's opinions, based on reasonable vocational probability, include, but are not limited to, the following:

1) From a pre-injury perspective, Mr. Glover left teaching and returned to truck driving. His earnings as a truck driver were less than his earnings as a teacher/coach. Based on the information presented to date, it is vocationally probable that as long as Mr. Glover continued to treat and maintain his hypertension, he would have continued driving a truck and maintained

similar earning patterns. He would have been eligible for continued wage increases and promotions.

2) From a post-injury perspective, Mr. Glover has not returned to work since the accident. Mr. Glover is receiving long-term disability benefits due to being unable to drive a truck. However, this is also not noted to be permanent. However, no physician has indicated that Mr. Glover cannot work in any capacity. No physician has provided permanent restrictions or limitations from an orthopedic/neurological or traumatic brain injury perspective.

3) Mr. Glover has indicated that he does not desire to return to teaching or driving a truck. However, a physician or medical professional has yet to indicate that he permanently cannot return to either job. Further, Mr. Glover could seek employment in sales, as was discussed with Abernathy. Mt. Glover expressed no disdain for that type of work in his deposition. Earnings provided by the U.S. Bureau of Labor Statistics indicated that the 25th percentile was approximately $38,000 annually. Further, Mr. Glover indicated he was advised he could earn approximately $70,000 annually if he performed that position at Abernathy.

4) Based on the totality of evidence produced to date, it lacks foundation and is purely speculation to indicate Mr. Glover has any loss of future earning capacity.

Dr. Aliff is also expected to testify regarding any relevant or authoritative articles, journals, tables or textbooks which formed any basis of her opinions. Dr. Aliff is also expected to rebut the opinions and expert report(s) proffered by Plaintiffs' experts.

Dr. Aliff may also testify regarding any relevant or authoritative articles, journals, tables, or textbooks which forms the any basis of her opinions. The general substance of Dr. Aliff's mental impressions and a brief summary of the basis for them are contained within her report dated August 7, 2023, incorporated herein by reference and attached hereto as **Exhibit "U"**.

For additional information regarding her qualifications, experience, and expertise, please see her report and her Curriculum Vita attached hereto. She will express opinions with regard to the subject matter referenced above and as set out more specifically in her expert report as well as any opinions expressed at her oral deposition if and when taken. Please refer to evidence reviewed in her report attached hereto to her expert report which her marked as **Exhibit "U"** and is incorporated herein by reference.

Please see her written report and enclosures, attached as **Exhibit "U"** for specifics regarding her factual observations, mental impressions and opinions incorporated herein by reference.

Please see **Exhibit "U"** for all purposes for the information required by the Texas and Federal Rules of Civil Procedure, including the subject matter, the general substance of the expert's mental impressions and opinions and a summary of the bases for them. For information describing the documents and items reviewed by this expert, please see all documents and matters identified in her expert report, which you are already in possession of and all documents and items provided with this designation.

For additional details regarding Dr. Aliff's qualifications, experience, training, and education, please see her CV attached hereto as **Exhibit "V"**. Defendant further incorporates by reference herein and refers Plaintiffs to any supplemental reports (if any) of this expert and to the deposition testimony of and exhibits introduced through the deposition of this expert, if and when taken. Dr. Aliff may additionally review

expert reports of any experts designated by the parties in this matter as well as additional depositions taken in the future.

Any and all documents that have been provided to date to Dr. Aliff through the date of this Designation/Disclosure are itemized below, as well as resources that were reviewed and relied upon:

1) Records from Advantage Medical Healthcare System

2) Records from MRI Centers of Texas

3) Records from Arkansas Surgical Hospital

4) Records from Dr. Barry Baskin, M.D.

5) Records from Neuro Restorative Timber Ridge

6) Records from Ryan Johnston OTR/L, DRS.

7) Records from BHRI Driver Rehab Program

8) Records from Dr. Brad Williams, Ph.D.

9) Records from Collom and Carney Clinic

10) Records from Wadley Regional Medical Center

11) Texas Department of Transportation

12) Records from Ortho Arkansas

13) Records from Precision Spine Care

14) Records from Smith County Healthcare Systems

15) Records from Texarkana Family Healthcare

16) Records from Little Rock Eye Clinic-North

17) Records from University of Arkansas for Medical Sciences (UAMS)

18) Records from Baptist Conway

19) Records from TRMH MRI Imaging Center

20) Jeff Glover Deposition

21) Tresa Glover Deposition

22) Watters Report

23) Kansas City Life Insurance Records

24) Retailers Casualty Insurance Records

25) Shirzadi Report

26) Telephone Call with Dr. Lacritz, 8/7/2023

27) U.S. Bureau of Labor Statistics Occupational Requirements Survey https://www.bls.gov/ors/

28) U.S. Department of Labor (1991) Dictionary of Occupational Titles (4th ed, Revised),Washington, DC.

29) U.S. Department of Labor (1991) *The Revised Handbook for Analyzing Jobs,* Washington, DC: U.S. Government Printing Office

30) U.S. Department of Labor (1993) *Selected Characteristics of Occupations in the Revised Dictionary of Occupational Titles*, Washington, DC, U.S. Government Printing Office.

31) U.S. Department of Labor (2012) *Occupational Outlook Handbook, 2016-2017*. http://www.bls.gov/ooh/

32) U.S. Department of Labor (2017) *O*NET Online* http://www.onetonline.org/

33) U.S. Department of Labor (2012) Occupational Projections, Economic and Employment Projections, 2016-2026. http://www.bls.gov/news.release/ecopro.toc.htm

34) Labor Market Information was obtained via Job Browser Pro and Oasys Software. www.skilltran.com Published by Skilltran and utilizes the following CORE data sources:

a. Occupational Employment Survey (OES) – www.bls.gov/oes

b. Employment Projections – www.bls.gov/emp

c. Occupational Projections and Training Data (OPTD) – www.bls.gov/emp/optd

d. Current Population Survey (CPS) - www.bls.gov/CPS

e. North American Industry Classification System (NAICS) www.census.gov/eos/www/naics

f. SkillTRAN NAICS Industry Suggestions for each DOT Occupation

g. County Business Patterns (CBP) - http://www.census.gov/epcd/cbp/index.html

35) Transferrable Skills Analysis utilizing SkillTRAN software, Oasys, based upon publications of DOL

36) Skoog, G., Ciecka, J., & Krueger, K. (2019). *The Markov Process Model of Labor Force Activity 2012-2017: Extended Tables of Central Tendency, Shape, Percentile Points, and Bootstrap Standard Errors,* Journal of Forensic Economics, Vol. 28, No. 1- 2, pp. 15-108.

37) Weed, R. Special Editor (2002) Special Issues: *The Assessment of Transferrable Work Skills in Forensic Settings,* Journal of Forensic Vocational Analysis, Vol. 5, No. 1.

38) Weed, R., and Fields, T. (2002) *Rehabilitation Consultant's Handbook,* E and F, Inc. Athens, GA.

Dr. Aliff may also at the time of her deposition comment upon the information provided and/or opinions rendered by one or more other experts designated by Plaintiffs or any other party, as necessary for a complete discussion of her opinions. Her expert file will be produced at her deposition since all documents provided to the witness may be too voluminous for production here and most of them should already be in the possession of the other parties to this litigation. She reserves the right to

consider additional discovery or facts that may become available after this designation and prior to their testimony at trial and to refine their opinions and respond to opinions advanced by Defendant's experts.

For any compensation to be paid to the expert witness for the testimony and preparation of the testimony, please see **Exhibit "W"** attached.

For a listing of any other cases in which Dr. Aliff has testified as an expert at trial or Deposition, please see **Exhibit "X"** attached.

**Retained Expert Witness 7**
Charles (Chip) Hunter, Ph.D
Reynolds & Earle
4131 N. Central Expy, Suite 44
Dallas, TX  75204
214-219-8100
hunter@dallasecon.com

Chip Hunter, Ph.D, is an economist and expert in the field of finance and economics.  His testimony and opinions will relate to and encompass the alleged economic damage and issues in this case, including, but no limited to, economic calculations, any alleged loss of wages or loss of earning capacity, loss of support, and loss of household services.  Mr. Hunter may provide analysis of these areas based on a full return to work as a truck driver and/or other vocations available to Mr. Glover. The summary of Mr. Hunter's opinions are as follows:

1) Based on the conclusions in the report of Michelle Aliff, Ph.D., there is no future earning loss and therefore the present value of same is zero.

2) Dr. Needham's analysis of Mr. Glover's lost earning capacity is flawed and overstates damages because:

   a.  He miscalculates Mr. Glover's earnings as a truck driver.

    b.   He understates the effect of taxes on Mr. Glover's earnings.

    c.   He fails to consider that Mr. Glover's employer continued to pay him for approximately 27 weeks after the injury.

3)  Dr. Needham's analysis of the value of lost household services relies on an overstated hourly value for Mr. Glover's time.

The general substance of Mr. Hunter's mental impressions and a brief summary of the basis for them are contained within his report dated August 7, 2023 incorporated herein by reference and attached hereto as **Exhibit "Y"**. He has background and experience in the determination of economic loss of an individual based upon income in the past, applicable discount rates, the work life expectancy and life expectancy of the Plaintiff along with Plaintiff's wage earning capacity. For additional information regarding his qualifications, experience, and expertise, please see his report and his Curriculum Vita attached hereto. He will express opinions with regard to the subject matter referenced above and as set out more specifically in his expert report as well as any opinions expressed at his oral deposition if and when taken. Please refer to evidence reviewed in his report attached hereto to his expert report which his marked as **Exhibit "Y"** and is incorporated herein by reference.

Please see his written report and enclosures, attached as **Exhibit "Y"** for specifics regarding his factual observations, mental impressions and opinions incorporated herein by reference.

Please see **Exhibit "Y"** for all purposes for the information required by the Texas and Federal Rules of Civil Procedure, including the subject matter, the general substance of the expert's mental impressions and opinions and a summary of the

bases for them. For information describing the documents and items reviewed by this expert, please see all documents and matters identified in his expert report, which you are already in possession of and all documents and items provided with this designation.

For additional details regarding Mr. Hunter's qualifications, experience, training, and education, please see his CV attached hereto as **Exhibit "Z"**. Defendant further incorporates by reference herein and refers Plaintiffs to any supplemental reports (if any) of this expert and to the deposition testimony of and exhibits introduced through the deposition of this expert, if and when taken. Mr. Hunter may additionally review expert reports of any experts designated by the parties in this matter as well as additional depositions taken in the future.

Any and all documents that have been provided to date to Mr. Hunter through the date of this Designation/Disclosure are itemized below:

1) Plaintiff's Original Complaint (June 2, 2022)

2) Deposition of Jeffrey Glover (May 12, 2023)

3) Deposition of Tresa Glover (May 12, 2023)

4) Abernathy Company Payroll Records (March 3, 2023)

5) Abernathy Company Personnel Records (March 3, 2023)

6) Plaintiff's Production – Wage and Income Transcripts for 2017-2021 (May 15, 2023)

7) Plaintiff's Production – Tax Returns (years 2017-2021)

8) Plaintiffs Designation of Experts, including:

   a. Allyn Needham Report – Lost Earning Capacity

      b.  Allyn Needham Report – Lost Household Services

9)  Client Questionnaire for Shipp Needham Economic Analysis completed for Jeffrey Glover

10) Plaintiff's medical records (not reviewed)

11) "Vocational Assessment," prepared by Michelle Aliff, Ph.D., August 7, 2023

Mr. Hunter may also at the time of his deposition comment upon the information provided and/or opinions rendered by one or more other experts designated by Plaintiffs or any other party, as necessary for a complete discussion of his opinions. His expert file will be produced at his deposition since all documents provided to the witness may be too voluminous for production here and most of them should already be in the possession of the other parties to this litigation. He reserves the right to consider additional discovery or facts that may become available after this designation and prior to their testimony at trial and to refine their opinions and respond to opinions advanced by Defendant's experts.

For any compensation to be paid to the expert witness for the testimony and preparation of the testimony, please see **Exhibit AA** attached.

For a listing of any other cases in which Mr. Hunter has testified as an expert at trial or Deposition, please see **Exhibit BB** attached.

## B.  WITNESSES WHO DO NOT PROVIDE A WRITTEN REPORT.

In accordance with Federal Rule of Civil Procedure 26(a)(2)(C), Defendant discloses the following information from the witnesses identified below who are not required to provide a written report.

The following witnesses have not been specifically retained as expert witnesses in this case but may be called upon to give testimony in the form of opinions within their respective areas of knowledge and expertise.

By designating these persons herein, Defendant is NOT adopting any or all of their opinions or conclusions as expressed in depositions or written documents authored or adopted by such individuals and exchanged in discovery herein. The persons are listed herein, out of an abundance of caution to allow Defendant to offer those opinions or conclusions to which they do agree or adopt if they chose to at the time evidence is presented to the jury. With regard to those persons that have been deposed, Defendant refers Plaintiffs to those depositions taken in this case and documents produced and exchanged concerning opinions and conclusions of certain employees of the Defendant or other entities set out below.

## I.  Defendant's Non-Retained Expert Witnesses

The following individuals may, due to their education, background, training or experience, be deemed to be experts, or capable and qualified to express expert opinions and who may testify in this matter. Defendant reserves the right to supplement or amend this list in accordance with the Federal Rules of Civil Procedure and the Court's First Amended Docket Control order.

> 1.   **Investigating Officer**.
> **Officer Darren M. Jones**
> C/O Texarkana Police Department
> 100 N. State Line Ave. #16
> Texarkana, TX 75501-5666
> (903) 798-3116

This officer investigated the subject accident and may have interviewed Plaintiff Jeffery Glover at the scene of the accident that occurred on January 11th, 2022. This officer may have also interviewed any eyewitnesses to the incident. Defendant incorporates by reference and refers Plaintiffs to the Peace Officer's Crash Report prepared following this accident, a copy of which is in the possession of the Plaintiffs' counsel.  Generally, Officer Jones is expected to testify, based on his training, experience, and background, regarding his investigation of the underlying accident including but not limited to any factual determinations made during the investigation and any mental impressions or opinions formed as a result of the investigation. Officer Jones is expected to provide testimony as to the following subject matters:

- Speed limits and regulations governing the area where the subject accident occurred;

- Conditions of the roadway at or about the time of the subject accident, including but not limited to lighting, roadway, weather, and other conditions of the road;

- Condition of the subject tractor and trailer immediately after the subject accident;

- Factors causing or contributing to cause the subject accident;

- Laws, rules, and regulations governing the subject accident; and

- Matters discussed or outlined in the Peace Officer's Crash Report prepared

following this accident.

## 2. Worker's Compensation Case Manager

**Heather Montgomery, RN, CCM**
C/O Systemedic
11617 Kanis Rd,
Little Rock, AR 72211

Ms. Montgomery has experience in working with persons who have been injured on the job. Ms. Montgomery has experience working with physicians who communicate with and treat patients who have experienced work-related injuries. Ms. Montgomery participated in the appointments of Plaintiff Jeffery Glover with his health care providers and acted as a case manager for Plaintiff Jeffery Glover's work-related injury treatment. During the course Plaintiff Jeffery Glover's treatment, Ms. Montgomery received and reviewed his medical records and communicated directly with the physicians who were treating Plaintiff Jeffery Glover. Ms. Montgomery's observations and opinions are contained within the records received from Retailer Casualty Insurance Company, which have been produced in this litigation. Ms. Montgomery is expected to provide testimony as to the following subject matters:

- Plaintiff Jeffery Glover's work-related injury treatments; and

- Evaluations of Plaintiff Jeffery Glover.

## 3. Current and Former Employees of Graphic Packaging International, LLC

**Cedric Lyons**
c/o Mayer LLP
750 North St. Paul Street,
Suite 700 Dallas, Texas 75201
(214) 379-6900

At the time of the subject accident, Mr. Lyons was employed by Defendant as a process tender whose duties included the loading of conveyances, including the subject trailer. As such, Mr. Lyons is expected to provide testimony regarding the loading of the trailer involved in this case. He is also expected to provide testimony regarding the policies, procedures, and training involved in the loading of paper rolls on to various conveyances. Mr. Lyons is further expected to provide testimony regarding the methods utilized in the loading and securement of paper rolls, including those of the subject trailer. Defendant refers Plaintiffs to the May 15, 2023, deposition testimony of Mr. Lyons, and all exhibits attached thereto, for further insight into the subject matters on which Mr. Lyons may testify. Defendant would also refer Plaintiffs to the materials produced thus far in this litigation for further insight into the subject matters on which Mr. Lyons may testify.

**Tonza Lyles**
2 Lewis Lane
Texarkana, Texas 75501
c/o
 Mayer LLP
750 North St. Paul Street,
Suite 700 Dallas, Texas 75201
(214) 379-6900

At the time of the subject accident, Ms. Lyles was employed by Defendant as an operator, whose duties included the supervision of process tenders, including Mr. Lyons. Ms. Lyles was the immediate supervisor of Mr. Lyons on the subject date and

as such is expected to provide testimony related to the loading of the subject trailer. Ms. Lyles is also expected to provide testimony regarding the policies, procedures, and training involved in the loading of paper rolls on to various conveyances. Ms. Lyles is further expected to provide testimony regarding the methodologies utilized in the loading and securement of paper rolls, including those of the subject trailer. Defendant refers Plaintiffs to the June 15, 2023, deposition testimony of Ms. Lyles, and all exhibits attached thereto, for further insight into the subject matters on which Ms. Lyles may testify. Defendant would also refer Plaintiffs to the materials produced thus far in this litigation for further insight into the subject matters on which Ms. Lyles may testify.

> **Alan Fonteneaux**
> 302 Pin Oak Street
> Atlanta, Texas
> c/o
> Mayer LLP
> 750 North St. Paul Street,
> Suite 700 Dallas, Texas 75201
> (214) 379-6900

At the time of the subject accident, Mr. Fonteneaux was employed by Defendant as a shift supervisor, whose duties included assisting in the training of employees, including the training of process tenders, like Mr. Lyons. Mr. Fonteneaux was one of several individuals involved in the training of Mr. Lyons. Mr. Fonteneaux is expected to provide testimony regarding the policies, procedures, and training involved in the loading of paper rolls on to various conveyances. Mr. Fonteneaux is further expected to provide testimony regarding the methods utilized in the loading and securement of paper rolls. Defendant refers Plaintiffs to the May 15, 2023,

deposition testimony of Mr. Fonteneaux, and all exhibits attached thereto, for further insight into the subject matters on which Mr. Fonteneaux may testify. Defendant would also refer Plaintiffs to the materials produced thus far in this litigation for further insight into the subject matters on which Mr. Fonteneaux may testify.

**Christopher Lummus**
c/o Mayer LLP
750 North St. Paul Street,
Suite 700 Dallas, Texas 75201
(214) 379-6900

At the time of the subject accident, Mr. Lummus was employed by Defendant as a superintendent of finishing and shipping. Mr. Lummus is expected to provide testimony regarding the methodologies involved in the transport of paper rolls on various conveyances. Mr. Lummus is further expected to testify regarding the shipping operations of Defendant's Queen City, Texas, paper mill. Mr. Lummus is may further testify regarding the duties and responsibilities of individuals and entities involved in the shipping of paper rolls from Defendant's paper mill, including the duties and responsibilities of Plaintiff Jeffery Glover as the driver of a tractor truck hauling paper rolls from Defendant's mill. Mr. Lummus is further expected to testify regarding the scope of duties and responsibilities of individuals and entities operating at Defendant's paper mill. Defendant refers Plaintiffs to the deposition testimony of Mr. Lummus, if and when it is taken, and all exhibits attached thereto, for further insight into the subject matters on which Mr. Lummus may testify. Defendant would also refer Plaintiffs to the materials produced thus far in this

litigation for further insight into the subject matters on which Mr. Lummus may testify.

> **Bryan Loper**
> c/o Mayer LLP
> 750 North St. Paul Street,
> Suite 700 Dallas, Texas 75201
> (214) 379-6900

At the time of the subject accident, Mr. Loper was employed by Defendant as an operator and training learning leader. Mr. Loper is expected to provide testimony regarding the training involved in the loading of paper rolls on to various conveyances. Mr. Loper may also testify regarding training provided on the operations of powered industrial trucks at Defendant's paper mill. Mr. Loper may further testify regarding Defendant's standards for loading and securing paper rolls on conveyances.  Mr. Loper may further provide testimony regarding the various loading procedures employed at Defendant's Queen City, Texas, paper mill. Mr. Loper may also testify regarding the manner and method of securing paper rolls on trailers. Defendant refers Plaintiffs to the deposition testimony of Mr. Loper, if and when it is taken, and all exhibits attached thereto, for further insight into the subject matter on which Mr. Loper may testify. Defendant would also refer Plaintiffs to the materials produced thus far in this litigation for further insight into the subject matters on which Mr. Loper may testify.

> **Jerry Hilton**
> 4437 Keller Drive
> Collinston, Louisiana 71229
> c/o
> Mayer LLP
> 750 North St. Paul Street,

Suite 700 Dallas, Texas 75201
(214) 379-6900

Mr. Hilton is a former employee of the Defendant who was employed as an assistant operator at the time of the subject accident. Mr. Hilton's duties included assisting in the training of employees, including the training of process tenders, like Mr. Lyons. Mr. Hilton was one of several individuals involved in the training of Mr. Lyons. Mr. Hilton is expected to provide testimony regarding the policies, procedures, and training curriculum in place during his tenure at Defendant's paper mill regarding the loading of paper rolls. Mr. Hilton may also provide testimony regarding the methods utilized in the loading and securement of paper rolls. Defendant refers Plaintiffs to the June 15, 2023, deposition testimony of Mr. Hilton, and all exhibits attached thereto, for further insight into the subject matters on which Mr. Hilton may testify. Defendant would also refer Plaintiffs to the materials produced thus far in this litigation for further insight into the subject matters on which Mr. Hilton may testify.

### 4. Current and Former Employees of the Abernathy Company

**Rodney Koller**
c/o the Abernathy Company
3800 Abernathy drive
Texarkana, Arkansas 71854

At the time of the subject accident, Mr. Koller was employed by the Abernathy Company as a Human Resource Manager. As such, Mr. Koller is expected to provide testimony regarding Plaintiff Jeffrey Glover's job performance and tenure at the Abernathy Company. He may also testify regarding the policies and procedures for logistics drivers employed by the Abernathy Company. Mr. Koller may also provide

testimony regarding any training related to the Federal Motor Carriers Safety Act provided to Abernathy Company logistics drivers. Mr. Koller may further testify regarding operations training provided to Abernathy Company logistics drivers. Mr. Koller is further expected to provide testimony regarding the hiring and employment requirements for logistics drivers employed by the Abernathy Company. Mr. Koller may also testify regarding the training materials provided to logistics drivers employed by the Abernathy Company. Mr. Koller may further testify regarding the Abernathy Company's safety values and policies. Mr. Koller is further expected to provide testimony regarding safety certification processes in place at the Abernathy Company for logistics drivers. Defendant refers Plaintiffs to the deposition testimony of Mr. Koller, when it is taken, and all exhibits attached thereto, for further insight into the subject matter on which he may testify.

> **Ray Abernathy**
> c/o the Abernathy Company
> 3800 Abernathy drive
> Texarkana, Arkansas 71854

At the time of the subject accident, Mr. Abernathy was the President and CEO of the Abernathy Company. As such, Mr. Abernathy is expected to provide testimony regarding the policies and procedures for logistics drivers employed by the Abernathy Company. Mr. Abernathy may also testify regarding any investigations conducted by the Abernathy Company following the subject accident. Mr. Abernathy may also provide testimony regarding the Abernathy Company's business values. Mr. Abernathy is further expected to provide testimony regarding the safety processes utilized by Abernathy Company for logistics drivers. Defendant refers Plaintiffs to

the deposition testimony of Mr. Abernathy, when it is taken, and all exhibits attached thereto, for further insight into the subject matter on which he may testify.

**Lorrie Richardson**
55 County Road 3657
Queen City, Texas 75572

At the time of the subject accident, Ms. Richardson was a logistics driver employed by the Abernathy Company. As such, Ms. Richardson is expected to provide testimony regarding the policies and procedures governing logistics drivers employed by the Abernathy Company. Ms. Richardson may also testify regarding any Federal Motor Carriers Safety Act training provided to Abernathy Company logistics drivers. Ms. Richardson may also provide testimony regarding tractor and trailer operations training provided to Abernathy Company logistics drivers. Ms. Richardson is further expected to provide testimony regarding training and materials provided to logistics drivers employed by the Abernathy Company. Ms. Richardson is further expected to provide testimony regarding safety training provided to Abernathy Company logistics drivers. Ms. Richardson is further expected to provide testimony regarding safety certification requirements for Abernathy Company logistics drivers. Defendant refers Plaintiffs to the deposition testimony of Ms. Richardson, when it is taken, and all exhibits attached thereto, for further insight into the subject matter on which she may testify. Defendant would also refer Plaintiffs to the affidavit of Ms. Richardson, a copy of which is in the possession of the Plaintiffs' counsel.

**Ashly Myers**
2621 Bruce Street
Texarkana, Texas 75501
(903) 733-1281

Ms. Myers is a former employee of the Abernathy Company who was employed as a Logistics Supervisor at the time of the subject accident. As such, Ms. Myers is expected to provide testimony regarding the policies and procedures for logistics drivers employed by the Abernathy Company.  Ms. Myers may also testify regarding the training related to the Federal Motor Carriers Safety Act provided to Abernathy Company logistics drivers. Ms. Myer may also testify regarding any tractor and trailer operation training provided to Abernathy Company logistics drivers. Ms. Myers may further testify regarding any safety training provided to Abernathy Company logistics drivers. Ms. Myers is also expected to testify regarding the post-accident activities and communications of the Abernathy Company related to the subject accident.  Ms. Myers may also testify regarding any investigations conducted by the Abernathy Company following the subject accident.  Defendant refers Plaintiffs to the deposition testimony of Ms. Myers, when it is taken, and all exhibits attached thereto, for further insight into the subject matter on which she may testify. Defendant would also refer Plaintiffs to the affidavit of Ms. Myers, a copy of which is in the possession of the Plaintiffs' counsel.

**Cory McMurry**
Jackson, Mississippi
(903) 826-1458

Mr. McMurry is a former employee of the Abernathy Company who was employed as the Director of Warehousing and Logistics at the time of the subject accident. Mr. McMurry is expected to provide testimony regarding the policies and procedures in place at the time of the subject accident for logistics drivers employed

by the Abernathy Company.  Mr. McMurry may also provide testimony regarding training related to the Federal Motor Carriers Safety Act provided to Abernathy Company logistics drivers. Mr. McMurry is further expected to testify regarding the tractor-trailer operations training provided to Abernathy Company logistics drivers. Mr. McMurry may also provide testimony regarding the safety training provided to Abernathy Company logistics drivers. Mr. McMurry may further testify regarding the post-accident activities and communications of the Abernathy Company.  Mr. McMurry may provide further testimony related to the investigations conducted by the Abernathy Company into the subject accident.  Defendant refers Plaintiffs to the deposition testimony of Mr. McMurry, when it is taken, and all exhibits attached thereto, for further insight into the subject matter on which he may testify. Defendant would also refer Plaintiffs to the affidavit of Mr. McMurry, a copy of which is in the possession of the Plaintiffs' counsel.

**Tim Morgan**
c/o the Abernathy Company
3800 Abernathy drive
Texarkana, Arkansas 71854

Mr. Morgan is the current Director of Warehousing and Logistics for the Abernathy Company. Mr. McMurry is expected to provide testimony regarding the current policies and procedures for logistics drivers employed by the Abernathy Company.  Mr. Morgan may also provide testimony regarding the current training curriculum for Abernathy Company logistics drivers, including current training related to the Federal Motor Carriers Safety Act. Mr. Morgan may also testify regarding current tractor-trailer operations training provided to Abernathy Company

logistics drivers. Defendant refers Plaintiffs to the deposition testimony of Mr. Morgan, when it is taken, and all exhibits attached thereto, for further insight into the subject matter on which he may testify.

> **Ryann Brown**
> c/o the Abernathy Company
> 3800 Abernathy drive
> Texarkana, Arkansas 71854

Ms. Brown is the current Logistics Administrator for the Abernathy Company. Ms. Brown is expected to provide testimony regarding the current policies and procedures for logistics drivers employed by the Abernathy Company. Ms. Brown may also provide testimony regarding the current training curriculum for Abernathy Company logistics drivers, including current training related to the Federal Motor Carriers Safety Act. Ms. Brown may also testify regarding current tractor-trailer operations training provided to Abernathy Company logistics drivers. Defendant refers Plaintiffs to the deposition testimony of Ms. Brown, when it is taken, and all exhibits attached thereto, for further insight into the subject matter on which she may testify.

## II.    Plaintiff's Designated and Retained Expert Witnesses

The following individuals have been designated as retained expert witnesses by Plaintiffs to provide testimony in the form of opinions within their areas of knowledge and alleged expertise.

Plaintiff's retained experts include:

1. **Daniel R. Phillips**
   Axiom Reconstruction, Inc.
   205 S. Alma Drive
   Allen, Texas 75013

2. **Roger Allen**
   RGK Consultants, LLC
   211 E. Parkwood Drive
   Suite 110
   Friendswood, Texas 77546
   (281) 996-6062

3. **Allyn B Needham, Ph.D., CEA**
   6320 Southwest Blvd.
   Suite 113
   Fort Worth, Texas 76109
   (817) 348-0213

Defendant reserves the right to elicit, by way of cross-examination, opinion testimony from experts designated and called to testify by any other party to this lawsuit, including those experts who have been designated and or retained by the Plaintiffs.

Defendant also reserves the right to call additional rebuttal expert witnesses. At this time, Defendant cannot reasonably anticipate the testimony of any rebuttal witnesses. Moreover, because the subject matter concerning what testimony may require rebuttal testimony is currently unknown, Defendant cannot anticipate the need for rebuttal expert witness(es). Nor can Defendant provide information about any rebuttal witnesses' anticipated testimony at this time.

## III.    Plaintiff's Healthcare Providers

The following individuals have been designated or identified by Plaintiffs as health care providers.  These individuals may testify regarding the health care

treatment received by Plaintiff Jeffery Glover before and after the incident(s) made the basis of this lawsuit. They may also testify regarding Plaintiff Jeffery Glover's pre-existing medical conditions as well as the need for additional health care treatment in the future. Their opinions are believed to be set forth in the medical records prepared by them or at their direction, copies of which are in the possession of the Plaintiffs' counsel.

Defendant did not retain or employ any of these medical care providers, nor are any of them subject to Defendant's control. However, Defendant reserves the right to call all medical care provider(s) and/or physicians of Plaintiffs as non-retained expert witnesses who may be called to testify at the trial. Defendant may elicit testimony from these non-retained expert witnesses that would include but would not be limited to the injuries allegedly sustained by Plaintiff Jeffery Glover as a result of the incident that forms the basis of this lawsuit; the treatment rendered to Plaintiff Jeffery Glover for his alleged injuries; the diagnoses and cause or causes of Plaintiff Jeffery Glovers' alleged injuries, pre-existing injuries and/or conditions and any subsequent medical injuries treatment and/or conditions.

Defendant in no way concedes, stipulates, or acknowledges that these medical providers are qualified to render expert opinions in this matter or that their testimony is admissible. Defendant reserves the right to challenge each of these medical providers' qualifications and/or the reliability and relevance of their opinions. Defendant further reserves all additional rights regarding expert witnesses pursuant to the Federal Rules of Civil Procedure, the Federal Rules of Evidence, case law, and

court orders construing same.

These providers include:

1. Medical Personnel, Employees, Representatives and/or Custodians of Records for
**The Collom & Carney Clinic**,
5002 Cowhorn Creek Road
Texarkana, TX 75503
(903) 614-3000

2. Medical Personnel, including but not limited to, ***Dr. Lawrence O'Malley*** and ***Dr. Wayne Bruffet***, as well as any and all other Employees, Representatives and/or Custodians of Records for
**UAMS Orthopedic Clinic – Colonel Glenn**,
10815 Colonel Glenn Road, Suite 500
Little Rock, AR 72204
(501) 406-9201

To the extent Dr. O'Malley or Dr. Bruffett has provided deposition testimony prior to trial, Defendant hereby notifies Plaintiffs that it intends to utilize that deposition testimony, along with any and all written reports from these experts, any and all records of office visits and examinations, these experts' recorded opinions, and/or any and all other records that form the basis of these experts' opinions, to examine and/or challenge those opinions at the trial of this matter.

3. Medical Personnel, Employees, Representatives and/or Custodians of Records for
**Barry Baskin M.D.**
9501 Baptist Health Drive
Little Rock, AR 72205
(501) 223-2099

To the extent Dr. Baskin has provided deposition testimony prior to trial, Defendant hereby notifies Plaintiffs that it intends to utilize that deposition testimony, along with any and all written reports from this expert, any and all records of office visits and examinations, this expert's recorded opinions, and/or any and all other records that form the basis of these experts' opinions, to examine and/or challenge those opinions at the trial of this matter.

4. Medical Personnel, Employees, Representatives and/or Custodians of Records for
**Brad Williams, Ph.D.**
Psychological Services
13612 Rivercrest Drive
Little Rock, AR 72212
(501) 766-0221

To the extent Dr. Williams has provided deposition testimony prior to trial, Defendant hereby notifies Plaintiffs that it intends to utilize that deposition testimony, along with any and all written reports from this expert, any and all records of office visits and examinations, this expert's recorded opinions, and/or any and all other records that form the basis of these experts' opinions, to examine and/or challenge those opinions at the trial of this matter.

5. Medical Personnel, including but not limited to, ***Dr. Gabriel Jasso***, as well as any and all other Employees, Representatives and/or Custodians of Records for
**Smith County Healthcare Systems LLC**,
214 West Colorado Blvd.
Dallas, TX 75208
(214) 943-9431

To the extent Dr. Jasso has provided deposition testimony prior to trial, Defendant hereby notifies Plaintiffs that it intends to utilize that deposition testimony, along with any and all written reports from this expert, any and all records of office visits and examinations, this expert's recorded opinions, and/or any and all other records that form the basis of these experts' opinions, to examine and/or challenge those opinions at the trial of this matter.

6. Medical Personnel, Employees, Representatives and/or Custodians of Records for
A-**Medical Advantage Healthcare Systems, PA**,
214 West Colorado Blvd.
Dallas, TX 75208
(214) 943-9431

7. Medical Personnel, including but not limited to, ***Dr. Haley Layton***, as well as any and all other Employees, Representatives and/or Custodians of Records for
**Neurorestorative Timber Ridge**
15000 Highway 298

Benton, AR 72019
(501) 594-5211

To the extent Dr. Jasso has provided deposition testimony prior to trial, Defendant hereby notifies Plaintiffs that it intends to utilize that deposition testimony, along with any and all written reports from this expert, any and all records of office visits and examinations, this expert's recorded opinions, and/or any and all other records that form the basis of these experts' opinions, to examine and/or challenge those opinions at the trial of this matter.

8. Medical Personnel, including but not limited to, ***Dr. Aaron Calodney***, as well as any and all other Employees, Representatives and/or Custodians of Records for
**Precision Spine Care**
15000 Highway 298
Benton, AR 72019
(501) 594-5211

9. Medical Personnel, Employees, Representatives and/or Custodians of Records for
**Baylor Scott & White Texas Spine & Joint Hospital**
1814 Roseland Blvd
Suite 100
Tyler, Texas 75701
(903) 525-3300

10. Medical Personnel, Employees, Representatives and/or Custodians of Records for
**LifeNet Emergency Medical Services**
6225 St. Michael Drive
Texarkana, TX 75503
(903) 832-8531

11. Medical Personnel, Employees, Representatives and/or Custodians of Records for
**Wadley Regional Medical Center**
1000 Pine St.
Texarkana, TX 75501
(903) 798-8000

12. Medical Personnel, Employees, Representatives and/or Custodians of Records for
**Brain View**

214 W Colorado Blvd
Dallas, TX 75208
(214) 941-4550

13. Medical Personnel, Employees, Representatives and/or Custodians of Records for
**Arkansas Surgical Hospital**
5201 Northshore Drive
North Little Rock, AR 72118
(501) 223-2099

14. Medical Personnel, including but not limited to, ***Dr. Wayne Bruffet***, as well as any and all other Employees, Representatives and/or Custodians of Records for
**OrthoArkansas**
800 Fair Park Blvd.
Little Rock, AR 72204
(501) 500-3500

To the extent Dr. Bruffet has provided deposition testimony prior to trial, Defendant hereby notifies Plaintiffs that it intends to utilize that deposition testimony, along with any and all written reports from this expert, any and all records of office visits and examinations, this expert's recorded opinions, and/or any and all other records that form the basis of these experts' opinions, to examine and/or challenge those opinions at the trial of this matter.

15. Medical Personnel, Employees, Representatives and/or Custodians of Records for
**Baptist Health Medical Center – Little Rock**
9601 Baptist Health Dr
Little Rock, AR 72205
(501) 202-2000

16. Medical Personnel, Employees, Representatives and/or Custodians of Records for
**Stewart Health Care**
1000 Pine Street
Texarkana, Texas 75501

17. Medical Personnel, Employees, Representatives and/or Custodians of Records for
**Texarkana Family Healthcare**
1305 Arkansas Blvd.

Texarkana, AR 71854
(870) 648-1305

18. Medical Personnel, Employees, Representatives and/or Custodians of Records for
**MRI Centers of Texas, LLC**
PO Box 224852
Dallas, Texas 75222
(817) 226-1800

19. Medical Personnel, Employees, Representatives and/or Custodians of Records for
**Specialty Imaging Consultants**
4320 Westway Ave
Dallas, Texas 75205
(214) 693-8134

20. Medical Personnel, Employees, Representatives and/or Custodians of Records for
**Open Imaging of Mount Pleasant**
2001 N Jefferson Ave
Mount Pleasant, Texas 75455
(903) 575-0325

21. Medical Personnel, Employees, Representatives and/or Custodians of Records for
**Mount Pleasant Physical Therapy PC**
303 N Center St
New Boston, TX 75570
(903) 628-7700

22. Medical Personnel, Employees, Representatives and/or Custodians of Records for
**Texarkana Physical Therapy**
5602 Richmond Rd Suite 106
Texarkana, TX 75503

To the extent Plaintiffs have received medical treatment from any provider not listed herein, Defendant hereby designates any such provider as a non-retained expert. To the extent that, after the date this report is filed, Plaintiffs provide information and/or records related to any provider of medical care or services to

Plaintiffs, Defendant hereby designates all such providers and their affiliated custodians of records/affiants.

## C.    NOTICE PURSUANT TO RULE 26(a)(2)(B)(iii)

The above non-retained experts identified in Part B, may utilize as exhibits any documents produced in response to written discovery, documents available to either party via public records or an open records request, documents which establish or discredit any claim regardless of whether they were requested in discovery, any documents referenced in depositions, and any documents provided to the expert.

## D.    CROSS-EXAMINATION

Defendant reserves the right to elicit, by way of cross-examination, opinion testimony from experts designated and called to testify by any other party to this lawsuit.

## E.    OTHER PARTIES' DESIGNATED EXPERTS

Defendant hereby cross-designates and reserves the right to call as an expert witness, each person any other party has timely and properly designated as expert witnesses in this case. Defendant reserves the right, however, to challenge each of the expert's qualifications and/or the reliability and relevance of their opinions.

## F.    EXPERT REBUTTAL WITNESSES

Defendant also reserves the right to call rebuttal expert witnesses. At this time, Defendant cannot reasonably anticipate the testimony of any rebuttal witnesses. Moreover, because the subject matter concerning what testimony may require rebuttal testimony is currently unknown, Defendant cannot anticipate the

need for rebuttal expert witness(es). Nor can Defendant provide information about any rebuttal witnesses' anticipated testimony at this time.

Furthermore, to the extent that any person with knowledge of relevant facts is deemed qualified by his or her training, experience, or education, to provide expert testimony, Defendant reserves the right to elicit expert testimony from each such person.

## G.    RIGHT TO ELICIT ANY EXPERT OPINION OR LAY OPINION TESTIMONY

Defendant reserves the right to elicit any expert opinion or lay opinion testimony at the time of trial, which would be truthful, be of benefit to the jury to determine material issues of fact and would not be in violation of any existing court order or the FEDERAL RULES OF CIVIL PROCEDURE.

## H.    RESERVATION OF RIGHT TO SUPPLEMENT DESIGNATION

Defendant reserves the right to supplement this designation with additional designations of experts within any time limits imposed by the Court or any alterations of same by subsequent court order or agreement of the parties or pursuant to the Federal Rules of Civil Procedure and the Federal Rules of Evidence.

## I.    RESERVATION OF RIGHT TO CALL DEPONENTS

Defendant further reserves the right to call any witness that has testified by way of deposition in this case for purposes of offering opinion or expert testimony at the time of trial of this cause.

**J.      RIGHT TO WITHDRAW DESIGNATION OF ANY EXPERT**

Defendant reserves the right to withdraw the designation of any expert and to aver positively that any such previously designated expert will not be called as a witness to trial.